## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BOBBY TATE BOWMAN, ) | Case No. _____ |
| ) | |
|     Plaintiff, ) | |
| ) | **COMPLAINT AND DEMAND FOR** |
| v. ) | **JURY TRIAL** |
| ) | |
| WYETH, LLC, F/K/A WYETH, INC.; ) | |
| WYETH PHARMACEUTICALS, INC.; AND ) | |
| TEVA PHARMACEUTICALS USA, INC., ) | |
| ) | |
|     Defendants. ) | |
| ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Bobby Tate Bowman, by and through his undersigned attorneys, and files this Complaint against the above-named Defendants and shows the Court the following:

## I.

## INTRODUCTION

1.     Plaintiff, Bobby Tate Bowman, files this action against the above-named Defendants for personal injuries and damages he sustained in the summer of 2004, but before August 1, 2004, as a result of his use of the prescription drug Reglan, metoclopramide and/or metoclopramide HCl ("Reglan/metoclopramide") which was researched, created, formulated, tested, developed, designed, licensed, assembled, compounded, manufactured, marketed, promoted, advertised, distributed, labeled, detailed, supplied, packaged, and/or sold by the above-named Defendants as more fully detailed herein below.

2.     Plaintiff, Bobby Tate Bowman, has filed this lawsuit within any applicable statute of limitations period.

1

3.     Defendants are estopped from asserting the statute of limitations defense because they fraudulently concealed their wrongful conduct from Plaintiff as fully set forth herein.

## II.

## JURISDICTION AND VENUE

4.     The venue and jurisdiction of this action is proper because Defendants conducted business in the State of Minnesota through pharmaceutical sales representatives in the State of Minnesota and because Defendants were engaged in testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities Reglan/ metoclopramide; thus, there exists a sufficient nexus between the Defendants' forum contacts and Plaintiff's claims to justify this venue and the assertion of jurisdiction in Minnesota.

## III.

## PARTIES

5.     Plaintiff is a citizen and resident of the State of Kentucky, Knox County.

6.     Defendant Wyeth, LLC f/k/a Wyeth, Inc. is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in New Jersey. Wyeth, LLC f/k/a Wyeth, Inc.'s sole member is Pfizer, LLC, which is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in New York.  The sole member of Pfizer, LLC, is Pfizer, Inc., which is a Delaware corporation with its principal place of business in New York.  Wyeth, LLC may be served through its registered agent CT Corporation, 100 South 5th Street, Suite 1075, Minneapolis, Minnesota 55402. Wyeth, LLC is subject to the jurisdiction and venue of this Court.

7.     Defendant, Wyeth Pharmaceuticals, Inc., is a Delaware corporation and has its principal place of business in Pennsylvania.  Wyeth Pharmaceuticals, Inc. may be served with process through its registered agent The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.  Wyeth Pharmaceuticals, Inc. is subject to the jurisdiction and venue of this Court.

8.     References to Defendant Wyeth, LLC f/k/a Wyeth, Inc. include Wyeth, LLC f/k/a Wyeth, Inc. and all members, divisions, and subsidiaries, including, Pfizer, LLC and Pfizer, Inc., as well as successor-in-interest to A.H. Robins, Inc., American Home Drugs Corporation, and ESI, Lederle, Inc.  Wyeth, LLC f/k/a Wyeth, Inc. and Wyeth Pharmaceuticals, Inc. shall be collectively referred to as ("Wyeth").

9.     Defendant Teva Pharmaceuticals USA, Inc., ("Teva") is a Delaware corporation with its principal places of business in Pennsylvania.  Teva is a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd.  Teva may be served with process through its registered agent: Corporate Creations Network, 527 Marquette Avenue, #900, Minneapolis, Minnesota  55402. Teva Pharmaceuticals USA, Inc. is subject to the jurisdiction and venue of this Court.

10.     At all relevant times, Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly,  through  third  parties,  as  successor  in  interest,  or  other  related  entities Reglan/metoclopramide  in  the  State  of  Minnesota  and  in  interstate  commerce.   Wyeth manufactures and distributed generic metoclopramide through its ownership of ESI Lederle, Inc. ("ESI"), a former subsidiary which merged into Wyeth.

11.     At all relevant times, Teva was engaged in the business to testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or

indirectly, through third parties or related entities, Reglan/metoclopramide in the State of Minnesota and in interstate commerce.

## IV.

## __FACTUAL ALLEGATIONS__

12.     Wyeth and Teva may be referred to in this complaint collectively as "Pharmaceutical Defendants."  At all relevant times, Pharmaceutical Defendants were acting by and through their agents, servants and/or employees, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

13.     At all relevant times, Pharmaceutical Defendants were in the business of researching, creating, designing, formulating, compounding, testing, developing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, licensing, labeling, promoting, packaging, supplying, advertising, and selling the pharmaceutical drugs known as Reglan/metoclopramide in the State of Minnesota and in interstate commerce.

14.     The active ingredient, metoclopramide and metoclopramide HCl is a dopamine antagonist.

15.     Upon information and belief, in prescribing the Reglan/metoclopramide to Plaintiff on a long-term basis, Plaintiff's doctors relied upon information published in the package inserts and/or the Physicians' Desk Reference (hereinafter referred to as "PDR") or otherwise disseminated by the Reference Listed Drug Company (hereinafter referred to as "RLD") and/or the New Drug Application Holder (hereinafter referred to as "NDA Holder").

16.     Plaintiff ingested the Reglan/metoclopramide as prescribed.

17.   Plaintiff used the pharmaceutical drugs Reglan/metoclopramide without substantial change in the condition of the drugs between the time of design and manufacture of the drugs and the time Plaintiff used the drugs as directed.

18.   Plaintiff's long-term ingestion of the Reglan/metoclopramide caused injuries. Plaintiff brings this action for the purpose of recovering damages for the personal injuries he has suffered as a result of being prescribed and ingesting Reglan/metoclopramide.

19.   As a result of ingesting Reglan/metoclopramide, Plaintiff developed Tardive Dyskinesia which has resulted in significant injuries.

20.   Plaintiff was unaware of the serious side effects and dangerous properties of ingesting Reglan/metoclopramide.

21.   Plaintiff was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR, RLD, or by the NDA Holders.

22.   In 2004, Plaintiff's Reglan/metoclopramide was discontinued.

23.   Plaintiff's use of Reglan/metoclopramide, as prescribed, resulted in overexposure to the drugs which have caused Plaintiff to suffer serious, permanent and disabling injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically tardive dyskinesia, a severe and often permanent disfiguring neurological movement disorder.

24.   Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential

effects of exposure to and long term ingestion of Reglan/metoclopramide to the medical community, Plaintiff, and other foreseeable users of the drug.

25.     Plaintiff has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain, suffering, psychological injury and other injuries and damages due to the prescription and ingestion of this drug.

**B.     Pharmaceutical Defendants' Wrongful Conduct**

26.     The preceding paragraphs are incorporated herein as if fully set forth.

27.     This case involves Pharmaceutical Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that the subject Reglan/metoclopramide, when taken for long periods of time, caused serious, permanent and debilitating side effects, including tardive dyskinesia.

28.     Pharmaceutical Defendants jointly and severally marketed, manufactured and distributed Reglan/metoclopramide and encouraged the long term use of these drugs, misrepresented the effectiveness of these drugs and concealed the drug's dangerous side effects.

29.     Reglan/metoclopramide is indicated as short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

30.     Reglan/metoclopramide is indicated for use for no greater than twelve weeks; however, Pharmaceutical Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and/or esophageal reflux for durations that exceed twelve weeks.

31.     Patients who use Reglan/metoclopramide for long periods are at a significantly increased risk of developing a severe and permanent neurological movement disorder.

32.    Other serious side effects caused by ingesting Reglan/metoclopramide for long periods include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

33.    Patients who use Reglan/metoclopramide for long periods who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

34.    Tardive dyskinesia, one of the serious side effects associated with the ingestion of Reglan/metoclopramide is a debilitating neurological disorder that often results in involuntary and uncontrollable movements of the head, neck, face, arms, legs and trunk, in addition to facial grimacing, uncontrollable tongue movements and other involuntary movements.  Presently, there is no cure for tardive dyskinesia.

35.    Plaintiff's diagnosed tardive dyskinesia, caused by the ingestion of metoclopramide, is permanent.

36.    Wyeth is the successor in interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter referred to as "FDA") to distribute metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)1 schema in 1983.

37.    Defendant Wyeth's predecessor-in-interest, A.H. Robins Company, Inc. expressly warranted to some physicians that Reglan/metoclopramide is safe for long-term use.

38.    A.H. Robins knew that its warranties regarding safety for long-term use would be relied upon by ordinary, reasonable and prudent physicians who would share that information

---

[1]    Upon information and belief, Wyeth is the holder of multiple NDAs for Reglan, metoclopramide and metoclopramide HCl.

with other physicians in their communities and that eventually physicians would come to rely on A.H. Robins' express warranties about Reglan/metoclopramide's safety for long-term use.

39.     A.H. Robins' express warranties about the safety of Reglan/metoclopramide for long-term use were false and intentionally and negligently misleading.

40.     As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made my A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/metoclopramide, and all liabilities stemming therefrom.

41.     Wyeth manufactured, marketed and distributed Reglan, metoclopramide, and/or metoclopramide HCl through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI."[2]

42.     Wyeth knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling, including warnings about risks and side effects, and test results involving animal studies, clinical studies, and the drug's bioavailability.

43.     Wyeth knew that the data and information would be relied upon by the medical community, physicians, Plaintiff and other foreseeable users of Reglan/metoclopramide once the NDA was approved and Wyeth was listed and the Reference Listed Drug Company for the drug.

44.     Wyeth intentionally and negligently disseminated misleading information to physicians across the county, through the PDR, about the risks of long-term ingestion of Reglan/metoclopramide and the increased risk of extrapyramidal side effects, including tardive dyskinesia.

---

[2]  Upon information and belief, ESI was a former subsidiary which merged into Wyeth on or about December 15, 1998.

45.    At all times material hereto, Wyeth was aware of the serious side effects caused by Reglan/metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

46.    Wyeth has a duty to ensure their warnings to the medical community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report any data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

47.    Wyeth represented that Reglan/metoclopramide was safe for use to treat gastritis/gastroesophageal reflux knowing that the drug was not safe for that purpose and was dangerous to the health and body of Plaintiff.

48.    Wyeth represented that Reglan/metoclopramide caused minimal side effects knowing that the drug caused central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented.

49.    Wyeth had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan/metoclopramide for long-term use that was not safe for patients.

50.    Wyeth had, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan/metoclopramide received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

51.    Wyeth also had actual knowledge, through research by independent investigators, that the risk of tardive dyskinesia and other extrapyramidal side effects of Reglan/metoclopramide in

patients who receive the drug for 12 weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

52.     Wyeth knew, or through the exercise of reasonable care should have known, that many patients who use Reglan/metoclopramide are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

53.     Wyeth had actual knowledge of facts which demonstrated that representations in the Reglan/metoclopramide package insert, the PDR and literature they distributed to physicians were false and misleading.

54.     Wyeth failed to correct their monograph and/or disclose that knowledge to the medical community, Plaintiff, and other foreseeable users.

55.     It is the public policy of the United States and of this state, as reflected in the Hatch-Waxman Act, to encourage the availability of cheaper, generic drug products that are therapeutically equivalent to name brand products and to encourage the substitution, as appropriate, of such generic products for name brand products in patients' medical therapy.

56.     Wyeth, as prescription drug manufacturer and/or distributor, knew or should have realized that so-called "drug product selection laws," enacted in every state, including this state, authorize or require a prescription for a drug identified by product brand name or by generic name to be filled, subject to certain limitations, with a generic drug product that is therapeutically equivalent to the name brand drug product.

57.     Wyeth knew or ought to have realized that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product to give the

impression that the information contained in the package inserts accompanying their own generic prescription drugs is accurate and not misleading.

58.   Wyeth knew or ought to have known that the generic drug manufacturers also typically rely upon the marketing efforts of the name brand manufacturer to generate sales of their own products.

59.   Wyeth knew or ought to have realized that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

60.   Wyeth knew of should have known, specifically, that physicians would rely upon the information disseminated to them by the name brand manufacturer, regardless of whether the prescriptions might be filled with either the name brand product, Reglan, or generic Reglan/metoclopramide, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Reglan/metoclopramide.

61.   Teva submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations made by the RLD companies, requesting permission to manufacture, market, and distribute generic Reglan/metoclopramide.

62.   Under the ANDA process, the Code of Federal Regulations required Teva to submit labels for Reglan/metoclopramide initially identical in all material aspects to the reference listed drug label.

63.   Under the Code of Federal Regulations, Teva had a duty to ensure their Reglan/metoclopramide warnings to the medical community were accurate and adequate, to conduct post market safety surveillance, to review all adverse drug event information, and to

11

report any information bearing on the risk and/or prevalence of side effects caused by Reglan/metoclopramide.

64.    Under the Code of Federal Regulations, if Teva discovered information in the course of the fulfillment of their duties as outlined above, they must report that information to the medical community, Plaintiff, and other foreseeable users of Reglan/metoclopramide to ensure that their warnings are continually accurate and adequate.

65.    Teva failed to investigate the accuracy of their metoclopramide and/or metoclopramide HCl drug labels.

66.    Teva failed to review the medical literature for the metoclopramide drug and/or metoclopramide HCl drug.

67.    Teva relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical literature for Reglan/metoclopramide.

68.    Under the FDA schema, if the FDA approves a label change as requested by an ANDA holder, the NDA holder (also referred to as the RLD company) must also amend its label.

69.    Teva failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Reglan/metoclopramide.

70.    Pharmaceutical Defendants disseminated to physicians, through package inserts, the publication of the PDR, and otherwise, information concerning the properties and effects of Reglan/metoclopramide, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

71.   Pharmaceutical Defendants knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/metoclopramide substantially understated the prevalence of acute and long-term side effects on ingesting the drug.

72.   Pharmaceutical Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

73.   Pharmaceutical Defendants owed a duty in all of their several undertakings, including the dissemination of information concerning Reglan/metoclopramide, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

74.   Reglan/metoclopramide was widely advertised by Pharmaceutical Defendants as a safe and effective treatment of diabetic gastroparesis, gastroesophageal reflux disease (GERD) and other gastrointestinal disorders.

75.   Pharmaceutical Defendants failed to conduct and report post market safety surveillance on Reglan/metoclopramide.

76.   Pharmaceutical Defendants failed to review all adverse drug event information[3] and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/metoclopramide.

77.   Pharmaceutical Defendants failed to monitor all relevant scientific literature related to Reglan/metoclopramide.

---

[3]   Pharmaceutical Defendants are required to review all adverse drug experience information obtained or otherwise received . . . from any source . . . including derived from postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports from the scientific literature, and unpublished scientific reports. 21 C.F.R. § 317.80(b).

78.     Pharmaceutical Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/metoclopramide for long periods of time.

79.     Pharmaceutical Defendants failed to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy or safety of Reglan/metoclopramide.

80.     Pharmaceutical Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures that exposure to Reglan/metoclopramide can lead to tardive dystonia and other extrapyramidal side effects, that the risk is "believed" to increase with duration of therapy and total cumulative dose, and that therapy for longer than twelve weeks "cannot be recommended."

81.     Pharmaceutical Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/metoclopramide therapy to be reasonably safe, was unscientific and false.

82.     Pharmaceutical Defendants concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can be expected to lead to tardive dyskinesia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

83.     Pharmaceutical Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroporesis and/or other gastric disorders with Reglan/metoclopramide for longer than twelve weeks is unlikely to be reasonably safe.

14

84.     Some or all of the other Pharmaceutical Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/metoclopramide products received clear notice of Wyeth's suppression of important safety information concerning Reglan/metoclopramide, yet despite this notice chose to ignore the information and join consciously in the suppression.

**V.**

**CLAIMS FOR RELIEF**

**COUNT I**
**NEGLIGENCE**

85.     The preceding paragraphs are incorporated herein as if fully set forth.

86.     Pharmaceutical Defendants owed a duty to the general public and specifically to Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Reglan/metoclopramide at issue in this lawsuit.  Pharmaceutical Defendants failed to exercise reasonable care in the design of Reglan/metoclopramide because as designed, it was capable of causing serious personal injuries such as those suffered by Plaintiff Bobby Tate Bowman during foreseeable use.  Pharmaceutical Defendants also failed to exercise reasonable care in the marketing of Reglan/metoclopramide because they failed to warn that, as designed, Reglan/metoclopramide was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

87.     Pharmaceutical Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff in that Pharmaceutical Defendants:

    a.     Failed to use due care in developing, testing, designing, manufacturing, marketing, and distributing Reglan/metoclopramide so as to avoid the

aforementioned risks to individuals when Reglan/metoclopramide was being used for treatment of patients;

b.    Failed to accompany their product with proper or adequate warnings regarding adverse side effects and health risks associated with the use of Reglan/metoclopramide and the comparative severity and duration of such adverse effects;

c.    Failed to accompany their product with proper or adequate rate of incidence or prevalence of permanent irreversible neurological damage;

d.    Failed to provide warnings that accurately reflected the symptoms, scope or severity of the side effects and health risks;

e.    Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Reglan/metoclopramide;

f.    Failed to provide adequate training or information to medical care providers for appropriate use of Reglan/metoclopramide;

g.    Failed to adequately warn consumers and medical prescribers (but instead actively encouraged the sale of Reglan/metoclopramide), about the following: (1) that Reglan/metoclopramide should not be prescribed for more than twelve weeks; (2) that Reglan/metoclopramide can cause neuromuscular side effects, including, but not limited to, tardive dyskinesia; (3) that Reglan/metoclopramide should be discontinued in the face of involuntary facial, tongue, jaw, limb or trunk movements; and (4) that the health risks posed by Reglan/metoclopramide may become debilitating, difficult, and painful, necessitating lengthy and/or repeated visits to the doctor, clinic, or hospital;

h.      Failed to adequately test and/or warn about the use of Reglan/metoclopramide, including, without limitation, the possible adverse side effects and health risks caused by the use of Reglan/metoclopramide;

i.      Failed to adequately warn users, consumers and physicians about the severity, scope and likelihood of neurological damage and related dangerous conditions to individuals taking Reglan/metoclopramide; and

j.      Representing to physicians, including but not limited to Bobby Tate Bowman's prescribing physician, that this drug was safe and effective for use.

88.      The Reglan/metoclopramide was in substantially the same condition when it was ingested by Plaintiff Bobby Tate Bowman as it was in when it left the control of Pharmaceutical Defendants. Reglan/metoclopramide's capability to cause serious personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff. The Reglan/metoclopramide was consumed by Plaintiff as directed and without change in its form or substance.

89.      Pharmaceutical Defendants' failure to exercise reasonable care in the design and/or marketing of Reglan/metoclopramide was a proximate cause of all of Plaintiff's injuries and damages. Plaintiff seeks all damages to which he may be justly entitled.

## COUNT II.
## NEGLIGENT MISREPRESENTATION AND FRAUD

90.      The preceding paragraphs are incorporated herein as if fully set forth.

91.      Pharmaceutical Defendants, through their advertising, labeling, marketing, and sales/detail persons, made significant representations, which were false, knowing that such representations were false and/or with reckless disregard for the truth or falsity of such

17

representations, with the intent that Plaintiff rely on such material representations; Plaintiff acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

92.     In addition, and in the alternative if necessary, Pharmaceutical Defendants knowingly omitted and downplayed material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff rely on Defendants' misrepresentations; Plaintiff acted in actual and justifiable reliance on Defendants' representations and was injured as a result.

93.     Pharmaceutical Defendants committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiff relating to the Reglan/metoclopramide at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or public policy.

94.     Pharmaceutical Defendants misrepresented to the FDA, Plaintiff, and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide.

95.     Pharmaceutical Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, that Reglan/metoclopramide had defects, dangers, and characteristics that were other than what they had represented to Plaintiff and the health care industry generally.  Specifically, Pharmaceutical Defendants misrepresented to and/or actively concealed from Plaintiff and the consuming public that:

   a.     Reglan/metoclopramide had statistically significant increases in neuromuscular side effects which could result in serious injury;

b.    Patients on Reglan/metoclopramide should not take it more than twelve weeks;

c.    Reglan/metoclopramide was not fully and adequately tested for the neuromuscular side effects.

96.    As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Pharmaceutical Defendants, Plaintiff suffered significant and ongoing injuries and damages.    Further, because Pharmaceutical Defendants' conduct was willful, reckless, intentional and maliciously fraudulent, Plaintiff is entitled to an award of exemplary damages.

**PLAINTIFF'S DAMAGES**

97.    The preceding paragraphs are incorporated herein as if fully set forth.

98.    As a direct and proximate result of the acts of and/or omissions by the Pharmaceutical Defendants, Plaintiff has:

(a)    suffered severe and permanent injuries, which Plaintiff will be forced to endure for the remainder of Plaintiff's life;

(b)    suffered physical impairment and disfigurement;

(c)    suffered physical pain and suffering;

(c)    suffered mental pain and suffering;

(d)    suffered a loss of enjoyment of life;

(e)    incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating Plaintiff's injuries; and

(f)    incurred attorney's fees and expenses of litigation related to this action.

19

99.    Plaintiff is entitled to recovery an award for the injuries caused by the Pharmaceutical Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief against Defendants as follows:

1.    For judgment for damages sufficient to compensate for damages in excess of $75,000.00, including but not limited to past, present, and future economic expenditures in connection with Defendants' Reglan/metoclopramide;

2.    For compensatory damages according to proof;

3.    For all applicable statutory remedies that assert liability for Defendants' wrongdoings and improper conduct;

4.    For a disgorgement of profits;

5.    For prejudgment interest, as permitted by law;

6.    For reasonable costs, including attorneys fees as permitted by law; and

7.    For all other just and proper relief.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this case as to all claims in this action.


Respectfully submitted this __5__ day of May, 2010.

GOLDENBERG & JOHNSON, PLLC

By: _____
Michael K. Johnson (#258696)
Lucia J. W. McLaren (#388088)
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Ph: (612) 335-9961
Fax: (612) 339-8168

Email: mkjohnson@goldenberglaw.com

and

C. Andrew Childers
CHILDERS, SCHLUETER & SMITH, LLC
1932 North Druid Hills Road
Suite 100
Atlanta, Georgia 30319
(404) 419-9500

Counsel for Plaintiff